IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JENNIFER RAWLING,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-3459 |
| | : | |
| **THE SCHOOL DISTRICT OF PHILADELPHIA,** | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

**BAYLSON, J.**                                                                                         **NOVEMBER   12, 2024**

*Pro se* Plaintiff Jennifer Rawling commenced this civil action alleging violations of her rights under Title II of the Americans with Disabilities Act of 1990 ("ADA"), Section 504 of the Rehabilitation Act ("RA"), and Section 1557 of the Affordable Care Act ("ACA"), as well as a claim of defamation under state law. Currently before the Court is Rawling's Amended Complaint. For the following reasons, the Court will dismiss the Amended Complaint. Rawling will be granted leave to file a second amended complaint in the event she can cure the deficiencies noted by the Court.

**I.     FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[1]

In an Order entered September 4, 2024, the Court granted Rawling leave to proceed *in forma pauperis* and dismissed her initial Complaint upon screening pursuant to 28 U.S.C. § 1915(e)(2)(B). (*See* ECF No. 5.) The initial Complaint named only the School District of Philadelphia as a Defendant and was dismissed because, in the section of the standard form for

---

[1] The facts are taken from the Amended Complaint (ECF No. 6), for which the Court adopts the sequential pagination supplied by the CM/ECF docketing system.

entering the facts of the case, the information that Rawling entered appeared to run off the edge of the page and was not viewable in the document. (*See* ECF No. 5 at 1 n.1 (citing ECF No. 2 at 12).) Rawling was given an opportunity to correct the defect by filing an amended complaint, which she did. (*See* Am. Compl., ECF No. 6.) She also moves for the appointment of counsel. (ECF No. 7.)

Rawling states that she was a teacher with the School District of Philadelphia from August 2019 until October 2023. (Am. Compl. at 2.) In addition to the School District, Rawling's Amended Complaint names as Defendants: Investigative Officer Kristin J. Johnson, Principal Shawn McGuigan, Assistant Principal Maryanne Conkle, and Teacher Courtney Brown. (*See id.* at 1.) Rawling asserts that she was diagnosed with COVID-19 and informed the School District on May 15, 2022. (*Id.* at 2.) She says this diagnosis "later resulted in Long COVID, causing severe physical and mental limitations," though she does not indicate when she was diagnosed with "Long COVID" or detail the resultant limitations.[2] (*Id.*)

---

[2] Here and for every other factual allegation in her Amended Complaint, Rawling references exhibits that were not filed with the Court. (*See, e.g.*, Am. Compl. at 2, ¶ 2 (citing "Exhibit 1: COVID-19 Notification").) Should Rawling choose to file a second amended complaint as outlined in this Memorandum, she should ensure that any exhibits on which her claims rely are included with her submission. However, Rawling should also be mindful that, although the Court may consider exhibits attached to a *pro se* plaintiff's complaint in conducting a statutory screening under 28 U.S.C. § 1915(e)(2)(B), *see Harris v. U.S. Marshal Serv.*, No. 10-328, 2011 WL 3607833, at *2 (W.D. Pa. Apr. 6, 2011), *report and recommendation adopted as modified*, 2011 WL 3625136 (W.D. Pa. Aug. 15, 2011), a plaintiff may not state a claim by relying *solely* on exhibits, *see Berkery v. Credit Collection Servs.*, No. 21-3809, 2021 WL 4060454, at *2 (E.D. Pa. Sept. 7, 2021) ("While a court may consider exhibits attached to a complaint, merely attaching exhibits is insufficient to meet the requirement that a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."); *see also Estate of Egenious Coles v. Zucker, Goldberg & Ackerman*, 658 F. App'x 108, 111 (3d Cir. 2016) ("[W]e cannot fault the District Court for failing to intuit the necessary factual allegations from one of the many exhibits appended to the complaint.").

On August 25, 2022, Rawling sent an email to Defendant Conkle "disclosing her illness." (*Id.*) She claims that Conkle then "shared" the email with Defendant Brown, "who spread defamatory rumors and organized a visit to Plaintiff's residence." (*Id.*) She states that Brown "contacted Plaintiff's daughter and mother without Plaintiff's consent, coercing them to participate in the visit." (*Id.*) Rawling claims that the same day, August 25, 2022, "Defendant's agents" came to her home, "threatened her with termination, and unlawfully blocked her from entering her home." (*Id.*) The following day, August 26, 2022, the "Philadelphia Police conducted a wellness check [at her home] following an anonymous tip," but "concluded there was no basis for the claims of mental distress." (*Id.* at 3.)

Rawling asserts that, on an unspecified date, she filed a grievance with the "Office of Talent – Employee and Labor Relations" that was "ignored." (*Id.*) She claims that, at some unspecified point, her request for an accommodation in the form of transfer to another school was denied, "and she was forced into constructive termination." (*Id.*) She states that her employment with the School District ended in October 2023. (*Id.* at 2.)

Rawling brings claims for substantive violations of and retaliation under the ADA, RA, and ACA, as well as a state-law claim for defamation. (*Id.* at 3.) She seeks injunctive relief and damages. (*Id.* at 4.)

II. **STANDARD OF REVIEW**

Because Rawling has been granted *in forma pauperis* status, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Amended Complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to

determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  At the screening stage, the Court will accept the facts alleged in the *pro se* Amended Complaint as true, draw all reasonable inferences in Rawling's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

As Rawling is proceeding *pro se*, the Court construes her allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants."  *Id.*

Furthermore, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues sua sponte").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

## III.  DISCUSSION

Rawling's *pro se* Amended Complaint is short and largely conclusory.  As noted above, she references numerous exhibits throughout the Amended Complaint that were not filed with the Court.  The Court understands Rawling to allege discrimination under the ADA, RA, and ACA[3] based on a failure to accommodate her disability, which ultimately led her to her resignation under conditions that she claims amounted to retaliation and constructive discharge.

The proper defendant under a Title II ADA claim is the public entity or an individual who controls or directs the functioning of the public entity.  *See Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002).  The proper Defendant under an RA claim is the public entity receiving federal assistance.  *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) (stating that "suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals").  Title II of the ADA does not provide for individual liability.  *See Kokinda v. Pennsylvania Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (*per curiam*) ("Kokinda's claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability."); *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (*per curiam*) ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim.").[4]  Accordingly, the

---

[3]  Stating a claim of disability discrimination under section 1557 of the ACA requires a plaintiff to plead a predicate ground for liability under the RA (or other enumerated statute not at issue here).  *See* 42 U.S.C. § 18116(a); *see also Doe v. BlueCross BlueShield of Tennessee, Inc.*, 926 F.3d 235, 238-39 (6th Cir. 2019); *Doe v. City of Philadelphia*, No. 24-0468, 2024 WL 3634221, at *4 (E.D. Pa. Aug. 2, 2024).  Accordingly, in conducting statutory screening of Rawling's claims, the Court will assess her ACA claim as part of the analysis under the ADA and RA.

[4]  A claim under Title II of the ADA for a past violation is cognizable against an individual defendant in his or her official capacity.  *See Holden v. Wetzel*, No. 18-237, 2021 WL 1090638,

Court construes Rawling's claims as asserted against the Philadelphia School District, rather than the individually named Defendants.

"Both the ADA and the RA require public entities . . . to provide, in all of their programs, services, and activities, a reasonable accommodation to individuals with disabilities." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 287 (3d Cir. 2019). "When a plaintiff sues under both the RA and the ADA, courts often address both claims in the same breath, construing the provisions of both statutes in light of their close similarity of language and purpose," since "the scope of protection afforded under both statutes, *i.e.*, the general prohibition against discrimination, is materially the same." *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d Cir. 2018) (cleaned up). Although the substantive standards for determining liability under the ADA and the RA are the same, *see Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014), a party who seeks to proceed under the RA "must show that the allegedly discriminating entity receives federal funding," *McDonald-Witherspoon v. City of Philadelphia*, 481 F. Supp. 3d 424, 439 (E.D. Pa. 2020) (citing *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 235 n.10 (3d Cir. 2013)); *see also* 29 U.S.C. § 794(a).

To state a plausible claim under either the ADA or the RA, a plaintiff must allege that she "is a qualified individual with a disability, who was . . . subject to discrimination[] by reason of [her] disability." *Furgess*, 933 F.3d at 288-89. The plaintiff "must also show intentional discrimination under a deliberate indifference standard [if she] seeks compensatory damages."

---

at *4 (W.D. Pa. Mar. 22, 2021) (noting that official capacity claims for past violations of the ADA are theoretically actionable). Official capacity claims are indistinguishable from claims against the governmental entity that employs the named defendant. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)). Thus, an ADA claim against an individual defendant is really a claim against that defendant's employer.

*Id.* at 289 (footnote omitted).  To allege that she is a "qualified individual with a disability," Rawling must allege that she has a "disability" which is defined as "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A).  "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  *Id.* at § 12101(2)(A).  With the passage of the Americans with Disabilities Act Amendments Act ("ADAAA"), Congress declared that "[t]he definition of disability shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act."  Pub. L. No. 110-325, §§ 2(b)(1)-(6), 3(2)(a), § 4(a), 122 Stat. 3553, 3555.  Additionally, the ADAAA requires a "less searching analysis" of whether a plaintiff is "substantially limited."  *Kravits v. Shinseki*, No. 10-861, 2012 WL 604169, at *7 (W.D. Pa. Feb. 24, 2012).

Rawling alleges that she is a qualified individual with a disability, namely "Long COVID," and that the School District failed to accommodate her disability.  "There is . . . a consensus that what has been termed 'long COVID' may constitute a disability under the ADA depending on the duration and severity of symptoms."  *Coleman v. Children's Hosp. of Phila.*, No. 22-1445, 2023 WL 7412923, at *4 (E.D. Pa. Nov. 8, 2023) (citation omitted), *aff'd*, No. 23-3064, 2024 WL 4490602 (3d Cir. Oct. 15, 2024); *see also Muhammad v. CDCR*, No. 23-00756, 2023 WL 3956713, at *1 (E.D. Cal. May 25, 2023) (assuming, for screening purposes, that Long COVID, "as opposed to a standard infection that runs its course, is a potential disability for the purposes of the ADA and Rehabilitation Act").  However, even in the context of Long COVID, "to sufficiently allege that an impairment interferes with a major life activity, a plaintiff must elaborate on whether the alleged impairment interfered with his alleged major life activity during

7

the period of alleged discrimination by Defendants," and "the plaintiff's allegations must contain sufficient factual support for his or her purported limitations, such as describing in some detail the frequency, duration, or severity of his or her limitations." *Earl v. Good Samaritan Hosp. of Suffern NY*, 625 F.Supp.3d 292, 304 (S.D.N.Y. 2022) (cleaned up), *aff'd*, 22-2505, 2023 WL 8708417 (2d Cir. Dec. 18, 2023).

Taking the allegations in the Amended Complaint as true and drawing the reasonable inferences they support in Rawling's favor, the Court concludes that she has not alleged sufficient factual matter to proceed on her ADA and RA claims. Although she has stated in conclusory fashion that Long COVID has caused her "severe physical and mental limitations" and "qualifies as a disability" under the relevant statutes because "it substantially limits one or more major life activities," those bare recitations of the elements of a disability-discrimination claim are insufficient to satisfy her burden to plead facts with particularity. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." (internal quotation marks and citation omitted)). Her claims cannot proceed at this stage because she has not provided any detail about her Long COVID. Specifically, she has not stated a date on which she was diagnosed with or even began suffering the effects of Long COVID. She has not explained which major life activities are impaired or detailed the frequency, duration, or severity of her limitations. And she has not connected her purported impairments with the period of alleged discrimination. Recognizing that these pleading defects may be the result of her failure to attach exhibits to her Amended Complaint on which she planned to rely, the Court will dismiss her claims without prejudice to re-asserting them in a second amended complaint.

Rawling also asserts in conclusory fashion that the "Defendants retaliated against Plaintiff for asserting her rights under the ADA, [RA], and [ACA] by subjecting her to harassment, threats of termination, and public humiliation," and that she "was forced into constructive termination" after her request for accommodation was denied. (Am. Compl. at 3.) Although Rawling alleges that she filed a grievance with the Office of Talent – Employee and Labor Relations that was ignored, she does not state when she filed the grievance, or requested an accommodation for her purported disability.

"To state a prima facie case for retaliation under the federal employment statutes, [a plaintiff] must establish that (1) she engaged in protected activity, (2) Defendants took an adverse employment action against her, and (3) there is a causal link between the protected activity and Defendants' adverse action." *Larochelle v. Wilmac Corp.*, 769 F. App'x 57, 60 (3d Cir. 2019) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006)). It is well settled that voluntary resignation does not constitute an adverse employment action under the anti-discrimination statutes. *See Larochelle*, 769 F. App'x at 61; *Gunn v. On the Border Acquisitions, LLC*, 298 F. Supp. 3d 811, 823 (E.D. Pa. 2018). An adverse employment action may be shown, however, with allegations that the plaintiff was constructively discharged. *See Larochelle*, 769 F. App'x at 61; *Gunn*, 298 F. Supp. 3d at 823. To state a claim for constructive discharge, a plaintiff must allege that her employer "permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 974 (3d Cir. 1998) (citing *Spangle v. Valley Forge Sewer Auth.*, 839 F.2d 171, 173 (3d Cir. 1988)). This means that a defendant must have "knowingly permitted" objectively "intolerable conditions." *Id.* at 975 (quoting *Gray v. York Newspapers, Inc.*, 957

9

F.2d 1070, 1082 (3d Cir. 1992)); *see also Spangle,* 839 F.2d at 173. As the United States Court of Appeals for the Third Circuit has explained:

> Intolerability is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign; presumably every resignation occurs because the employee believes that it is in her best interest to resign. Rather, intolerability is assessed by the objective standard of whether a reasonable person in the employee's position would have felt *compelled* to resign—that is, whether she would have had no choice but to resign.

*Kiburz v. England*, 361 F. App'x 326, 337 n.11 (3d Cir. 2010) (quoting *Connors*, 160 F.3d at 976) (cleaned up). Courts consider various factors in determining whether an employee was forced to resign, including whether she: (1) was threatened with discharge; (2) was encouraged to resign; (3) was demoted or suffered a reduction in pay or benefits; (4) was involuntarily transferred to a less desirable position; (5) had job responsibilities altered; and (6) began receiving unsatisfactory job evaluations. *See Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502 (3d Cir. 2010).

In relation to these factors, Rawling alleges that "Defendant's agents . . . threatened her with termination" when they came to her home on August 25, 2022. (Am. Compl. at 2.) However, her purported constructive discharge did not occur until over a year later, in October 2023. Plaintiffs alleging retaliation generally plead causation by alleging facts showing (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism. *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015). Yet such allegations are not always required, provided that the facts alleged support a plausible inference of retaliation. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 792-93 & n.11 (3d Cir. 2016) (explaining that a complaint with sufficient factual allegations to raise an inference of causation between protected activity and adverse employment

action may state a claim for retaliation despite a lack of temporal proximity); *see also Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 557 (E.D. Pa. 2017) ("Where there is no unusually suggestive temporal proximity, courts look to the intervening period for circumstantial evidence that gives rise to an inference of causation when considered as a whole." (cleaned up)).  Here, Rawling has pleaded neither temporal proximity, because the alleged threat occurred over a year before she claims to have been constructively discharged, nor a pattern of antagonism, because she has alleged no facts about what occurred in the period between August 2022 and October 2023.  Accordingly, her retaliation and constructive discharge claims will be dismissed without prejudice, as well.[5]

Finally, because her federal claims will be dismissed, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over her claim of defamation under state law.  And because Rawling is a resident of Pennsylvania bringing suit against the Philadelphia School District, she cannot establish a basis for diversity jurisdiction under 28 U.S.C. § 1332(a).  Accordingly, her state law claims will be dismissed without prejudice to being reasserted.

### IV.     CONCLUSION

For the foregoing reasons, the Court will grant Rawling leave to proceed *in forma pauperis* and dismiss the ADA, RA, and ACA claims without prejudice pursuant to 28 U.S.C.

---

[5] To the extent Rawling also seeks to assert an ADA hostile work environment claim, she has failed to allege sufficient facts in support thereof.  To establish such a claim, a plaintiff must allege that 1) she is a qualified individual with a disability under the ADA; 2) she was subject to unwelcome harassment; 3) her employer harassed her because of her disability or because of a request for an accommodation; 4) the harassment was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and to cause an abusive working environment; and 5) the defendant employer knew or should have known of the harassment and failed to take prompt effective remedial action.  *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999).

§ 1915(e)(2)(B)(ii) for failure to state a claim. Any state law claims will be dismissed for lack of subject matter jurisdiction. Rawling will be given an opportunity to correct the defects in her claims by filing a second amended complaint. An appropriate Order follows, which provides further instruction about amendment.[6]

**BY THE COURT:**

**/s/ Michael M. Baylson**

**MICHAEL M. BAYLSON, J.**

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 24\24-3459 Rawling v School Dist of Phila\24-3459 Rawling mem dism FAC wo prej.docx

---

[6] Rawling's Motion for the Appointment of Counsel (ECF No. 7) is denied without prejudice to renewal after the Court conducts a statutory screening of any second amended complaint Rawling may file. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis).